# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JENNA HICKMAN, | ) |
| Claimant, | ) |
| vs. | ) Civil Action No. 4:17-CV-569-CLS |
| NANCY A. BERRYHILL, Acting Commissioner, Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Claimant, Jenna Hickman, commenced this action on April 7, 2017, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits. Claimant moved to remand the case to the Commissioner for consideration of additional evidence.[1] Claimant also submitted briefs in support of her entitlement to benefits.[2] For the reasons stated herein, the court finds that the matter should not be remanded to the Commissioner, and that the Commissioner's decision to deny claimant's benefits is due to be affirmed.

---

[1] Doc. no. 11 (Motion to Remand).

[2] Doc. no. 8 (Memorandum in Support of Disability); doc. no. 9 (Reply in Support of Disability).

# I. MOTION TO REMAND

Claimant asserts that her claim should be remanded to the Commissioner because the ALJ failed to consider records related to her November 19, 2015 back surgery. Claimant first visited orthopedic surgeon Dr. Gregory Gullung on October 28, 2015. She complained of constant pain, saying that, on a scale of 1-to-10, it was at a 9-10 level, limited range of motion, difficulty walking, and sleep disturbance, all of which were made worse with twisting, turning, sitting, walking, and sleeping. She stated that the symptoms commenced after she injured her back lifting a heavy item at work on May 9, 2013. Dr. Gullung's lumbar examination revealed normal alignment, tenderness, limited range of motion, reduced strength and sensation, equal reflexes, positive straight leg raising test, and unassisted ambulation. X-rays revealed degenerative disc disease and stenosis at the L5-S1 vertebra. Dr. Gullung requested claimant to return after undergoing an MRI.[3] The MRI performed on November 2, 2015, revealed "very mild lateral recess stenosis L5/S1 bilaterally, possible swelling S1 root as it is leaving foramen."[4]

Because claimant reported continuing severe pain, despite conservative treatment, Dr. Gullung recommended surgery, with the continuation of physical

---

[3] Tr. 622-24.
[4] Tr. 626.

therapy and medical intervention through the date of surgery.[5] The surgery occurred on November 19, 2015. Dr. Gullung performed a decompression at L5-S1 and an epidural steroid injection at L3-4.[6] Intraoperative imaging of the lumber spine was performed, but the November 20, 2015 report of that imaging does not state what was revealed.[7]

The administrative hearing took place on December 3, 2015, only two weeks after the surgery.[8] The ALJ questioned claimant about the effects of the surgery, and about what she was and was not able to do prior to the surgery. Dr. Gullung's surgical records were not available at the time of the hearing, but the ALJ later obtained them and made them part of the record.[9]

The ALJ's final decision discussed both Dr. Gullung's records and claimant's testimony about the effects of the surgery during the administrative hearing.[10] Accordingly, claimant's argument that the ALJ "failed to mention the surgery and failed to acknowledge the treatment records of the surgery" is simply not true.[11] The motion to remand is due to be denied.

---

[5] Tr. 627.
[6] Tr. 632-33.
[7] Tr. 634.
[8] Tr. 39.
[9] Tr. 49-52, 622-41.
[10] Tr. 28.
[11] *See* doc. no. 11 (Motion to Remand), at 1.

## II. REVIEW OF THE COMMISSIONER'S DENIAL OF BENEFITS

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that: (1) the ALJ's hypothetical question to the vocational expert ("VE") did not accurately state claimant's pain level or her residual functional capacity; (2) the ALJ failed to state adequate grounds for rejecting the opinion of an examining psychologist; (3) the ALJ's residual functional capacity finding was not supported by substantial evidence and violates Social Security Ruling 96-8p; and, (4) the ALJ failed to state adequate reasons for finding claimant to be less than fully credible. Upon review of the record, the court concludes these contentions are without merit.

**A.    Examining Psychologist's Opinion**

Social Security regulations provide that, when considering the weight to accord

4

*any* medical opinion (regardless of whether it is from a treating or non-treating source), the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; the question of whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments."). Additionally, the ALJ is not required to accept a conclusory statement from any medical source that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d), 416.927(d).

Dr. David Wilson, a clinical psychologist, examined claimant at the request of her attorney on November 23, 2015. He also reviewed treatment records from Carr Mental Wellness, where claimant had been diagnosed with major depressive/affective disorder and generalized anxiety disorder. Claimant reported taking Xanax on a daily basis to prevent panic attacks. She also had been taking anti-depressant medication since she was 16 years old. During the clinical interview, claimant demonstrated

intact thought processes, normal speech, and genuine pain behaviors. She denied hallucinations, delusions, and ideas of reference. She did have some indicators of obsessive-compulsive disorder, but they were not clinically significant. Her last panic attack occurred two weeks before the interview, and she reported that panic attacks were more likely when she was in public. Claimant's affect was within normal limits, but she reported being depressed all the time and sometimes not wanting to get out of bed. She also reported trouble sleeping, low appetite, and variable energy, but no crying spells or suicidal ideation. Her daily routine included doing chores around the house, caring for her horse and dog, watching television with her husband at night, spending time with friends, and sometimes attending church, but those activities were more difficult when she experienced bouts of depression or increased back pain. She had some problems with mental control and attention, mild problems with short term and working memory, above average acquired information, average abstract reasoning, and a valid pain profile. Dr. Wilson's summary assessment was as follows:

> Jenna appears to have serious problems with her back which could make it difficult for her to work — but this does need to be documented by a physician. She is very depressed and she is also highly anxious, and she has frequent panic attacks, even thought [*sic*] she takes a fairly large dose of Xanax, and she is required to take more when she has a panic attack. She is also on an antidepressant, but she is still quite depressed. Her ability to withstand the pressures of day to day occupational functioning is highly impaired. She would have difficulty

with both the task and the interpersonal aspects of any job. She is
capable of managing benefits.

Tr. 616-17. Dr. Wilson assessed claimant with moderate major depressive disorder, recurrent, panic disorder, and average intelligence.[12]

Dr. Wilson also completed a "Mental Health Source Statement" form. He indicated that claimant would be able to understand, remember, and carry out short and simple instructions, but she would not be able to maintain attention, concentration and/or pace for periods of at least two hours, perform activities within a schedule, be punctual within customary tolerances, sustain an ordinary routine without special supervision, adjust to routine and infrequent work changes, respond appropriately to criticism from supervisors, interact appropriately with co-workers, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness. He opined that, during a thirty-day period, claimant would be expected to miss twenty-five days of work due to her symptoms.[13]

The ALJ afforded only little weight to Dr. Wilson's assessment because it was

> inconsistent with the record as a whole and the claimant's own reports. Specifically, the claimant reported to providers at Carr Mental Health that medication was helping with her symptoms. Additionally, she reported to Dr. Wilson that her daily routine included doing some household chores, taking care of her horse and dog, watching television with her husband at night, and she even reported going out to dinner with friend [sic], or having them over. Furthermore, despite her anxiety,

---

[12] Tr. 613-17.
[13] Tr. 618.

7

depression, and alleged inability to work since May 2013, she testified and reported to Dr. Wilson that she continued to work part-time as a cashier until March 2015.

Tr. 31.

Claimant asserts that the ALJ failed to adequately specify the weight afforded to Dr. Wilson's opinion, and to explain the reasons for that decision. *See McClurkin v. Social Security Administration*, 625 F. App'x 960, 962 (11th Cir. 2015) ("'[W]hen the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion.'") (quoting *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011)) (alteration supplied). That argument is not supported by the record.

The ALJ specifically articulated that she was affording Dr. Wilson's assessment only little weight. She also articulated the reasons for that decision: *i.e.,* that the finding was inconsistent with claimant's reports to her treating psychiatrist that medication helped her symptoms, claimant's daily activities, and claimant's ability to continue work part-time.[14] Moreover, the ALJ's treatment of Dr. Wilson's assessment was supported by substantial evidence, including records from Carr Mental Wellness,[15] and claimant's reports to Dr. Wilson about her daily activities and

---

[14] Tr. 31.
[15] Tr. 477-504, 657-59.

work history.

## B. Residual Functional Capacity Finding

The ALJ found that claimant retained the residual functional capacity to perform light work,

> except the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. She can sit six of eight hours and stand and/or walk six out of eight hours. The claimant can never climb ladders, ropes, or scaffolds but she can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl, and can frequently balance and reach. She should avoid concentrated exposure to workplace hazards (e.g., dangerous machinery and unprotected heights). The claimant would be able to understand, remember, and carry out simple instructions. She can maintain attention and concentration for two-hour periods at a time and make simple work related decisions. She can adapt to routine and infrequent workplace changes. She can perform light jobs that do not require interaction with the general public, but she would be able to have occasional interaction with coworkers (jobs that do not require working in tandem with coworkers).

Tr. 24. Claimant asserts that the ALJ's residual functional capacity finding violated Social Security Ruling 96-8p because it "is simply conclusory and does not contain any rationale or reference to the supporting evidence . . . ."[16]

Social Security Ruling 96-8p states, in pertinent part:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must

---

[16] Doc. no. 8 (Claimant's Brief), at 34. Claimant's brief sometimes also refers to the applicable ruling as "SSR 96-8a." It seems clear, however, that claimant intended to rely upon SSR 96-8p.

discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Symptoms*. In all cases in which symptoms, such as pain, are alleged, the RFC assessment must:

- Contain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate;

- Include a resolution of any inconsistencies in the evidence as a whole; and

- Set forth a logical explanation of the effects of the symptoms, including pain, on the individual's ability to work.

The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence. In instances in which the adjudicator has observed the individual, he or she is not free to accept or reject that individual's complaints solely on the basis of such personal observations. . . .

SSR 96-8p (emphasis in original).

The ALJ's residual functional capacity finding satisfied these requirements. Contrary to claimant's suggestion, the finding was far from conclusory. The ALJ described in great detail the facts and evidence that supported her conclusion. She

evaluated the credibility of claimant's subjective complaints, resolved inconsistencies in the records, assigned appropriate weights to the medical opinions in the record, and explained the effects of claimant's impairments on her ability to work.

Claimant also asserts that the residual functional capacity finding was not supported by substantial evidence because there was no formal assessment by a treating or consulting physician of claimant's ability to perform various work functions. It is the ALJ's responsibility — not that of any physician — to determine a claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1546(c), 416.946(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council (when the Appeals Council makes a decision) is responsible for assessing your residual functional capacity."). *See also Robinson v. Astrue,* 365 F. App'x 993, 999 (11th Cir. 2010) ("We note that the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors."). An ALJ's residual functional capacity finding still can be supported by substantial evidence, even if the ALJ rejects the only physician opinion regarding the extent of the claimant's limitations. *See Green v. Social Security Administration,* 223 F. App'x 915, 923-24 (11th Cir. 2007). It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735

> (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 F. App'x. 597, 598 (11th Cir. 2005) (emphasis supplied). Furthermore, claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). The court concludes that the record in this case was sufficient to give substantial support to the ALJ's decision, even in the absence of a Medical Source Opinion, Physical Capacities Evaluation, or other such assessment form from a treating or examining physician.

**C.     Credibility**

Claimant next argues that the ALJ failed to state adequate reasons for finding her testimony regarding the extent of her subjective limitations to be less than fully credible. To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such

severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). An ALJ "must articulate explicit and adequate reasons" for rejecting a claimant's subjective testimony of pain as not believable. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810 F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986)). Furthermore, "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)) (alteration supplied).

The ALJ properly applied these legal principles. Claimant testified during the administrative hearing that she could no longer work because of her depression, anxiety, and low back pain.[17] She described having panic attacks when in public, when around a group of people who are known to her, and sometimes even when she is alone.[18] Prior to her back surgery, which occurred two weeks before the administrative hearing, she experienced severe leg pain that required her to constantly alternate between sitting and standing. She had trouble walking and often would have to lie flat on her back.[19] Immediately following the surgery, she ceased having

---

[17] Tr. 44.
[18] Tr. 47.
[19] Tr. 50.

*leg* pain, but her *back* pain continued.[20] Before the surgery, she was able to care for her personal needs. She also could perform some chores, including laundry, washing dishes, and caring for animals, but doing so caused her extreme pain. She attempted to perform light work as a cashier, but standing on concrete, bending, and twisting caused too much pain and resulted in her taking time off work. She testified that she was not able to sleep well at night, and she would typically lie down approximately 75% of the day. She could only sit for about ten to fifteen minutes, and stand for ten minutes, before needing to change positions. If she shopped at a grocery store, she required help lifting anything over ten pounds, and her anxiety levels were exacerbated. She experienced difficulties concentrating as a result of her pain, and would often "zone out." Her daily pain level before the surgery was an eight or nine on a ten-point scale, but by the date of the hearing, it was down to a six or seven. Her husband and mother provided her daily help with chores like laundry, dishes, and sweeping floors.[21]

The subjective symptoms and limitations described by claimant, if fully credited, would render her unable to sustain full-time employment. But the ALJ did not fully credit claimant's testimony. Instead, while the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the

---

[20] Tr. 51.
[21] Tr. 53-61.

symptoms claimant alleged, she concluded, nonetheless, that claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the residual functional capacity finding.[22]

Claimant argues that the ALJ did not adequately articulate reasons for rejecting her subjective complaints, but this court disagrees. The ALJ discussed in great detail why the medical records did not support disabling symptoms and limitations as a result of claimant's degenerative disc disease, including diagnostic imaging that revealed only mild or minimal findings, conservative treatment plans, relief from medication, and good clinical findings.[23] She also noted claimant's ability to continue some work activity and her ability to perform daily activities.[24] The ALJ similarly discussed claimant's mental health treatment records, which revealed no more than moderate findings, and improvement of symptoms with medication. All of that, combined with evidence of claimant's work history and daily activities, indicated to the ALJ that claimant was not disabled as a result of her psychiatric symptoms. The ALJ's discussion was more than adequate to support her decision to not fully credit claimant's subjective complaints of pain and mental limitations, and the ALJ's conclusions were supported by substantial evidence of record.

---

[22] Tr. 25.

[23] Tr. 25-28.

[24] Tr. 28.

Claimant also complains that the ALJ relied too heavily on her limited daily activities in rejecting her subjective complaints. The Eleventh Circuit has disavowed the notion that "participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability." *Lewis v. Callahan,* 125 F.3d 1436, 1441 (11th Cir. 1997). That holding does not mean, however, that a claimant's ability to carry out daily activities should not be considered at all in the disability determination process. To the contrary, Social Security regulations expressly provide that such activities *should* be considered. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (listing "daily activities" first among the factors the Social Security Administration will consider in evaluating a claimant's pain). Here, the ALJ did not rely *solely* upon claimant's daily activities in determining her ability to work. She simply (and properly) considered claimant's activities as one factor in evaluating the *credibility* of claimant's subjective complaints. Moreover, the ALJ's conclusions about claimant's credibility and daily activities were supported by substantial evidence.

**D.    Hypothetical Question to the Vocational Expert**

"'In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'" *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180

16

(11th Cir. 2011) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (*per curiam*)). Claimant contends that the vocational expert's testimony in this case was not substantial evidence of her ability to work because the ALJ's hypothetical question to the vocational expert did not accurately state her pain level or her residual functional capacity. As previously discussed, however, the ALJ's residual functional capacity finding, and her decision to not fully credit claimant's complaints of pain and other subjective symptoms, were supported by substantial evidence and in accordance with applicable legal standards. "[T]he ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Commissioner Of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004) (alteration supplied). Accordingly, the ALJ did not err in formulating her hypothetical question to the vocational expert.

**E.     Conclusion and Order**

Consistent with the foregoing, claimant's motion to remand is DENIED. Additionally, the court concludes that the ALJ's decision was based upon substantial evidence and in accordance with applicable legal standards. Accordingly, the decision of the Commissioner is AFFIRMED. Costs are taxed against claimant. The Clerk is directed to close this file.

DONE and ORDERED this 29th day of January, 2018.

                                   _____
                                   United States District Judge